UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNI.ASIA GENERAL INSURANCE BERHAD,

Plaintiff,

v.

HYUNDAI MERCHANT MARINE CO., LTD., *et al.*,

Defendants.

Case No. C11-766RSL

ORDER GRANTING MOTION FOR 12(B)(3) DISMISSAL

This matter comes before the Court on "Defendant American Independent Line's Motion to Dismiss Pursuant to Rule 12(b)(3)" (Dkt. # 25). For a second time, Defendant asserts that a forum selection clause precludes Plaintiff from bringing the present action against it in the Western District of Washington. Defendants APL Limited ("APL") and Eagle Marine Services, Ltd. ("Eagle Marine"), again join in the motion and ask that the action against them be dismissed as well. Based on the newly provided evidence and more fully supported arguments, the Court GRANTS the motion.

## I. BACKGROUND

This action stems from the total loss of a large Caterpillar, Inc., heavy equipment machine valued at over $1 million. The machine was damaged while being loaded on a ship at Terminal 5 at the Port of Seattle. Complaint (Dkt. # 1) at 4. Plaintiff provided cargo insurance to the consignee of the equipment, Sime Darby Industrial Sdn Bhd, id., and files this suit in subrogation to recover those monies it paid to Sime.

Defendant American Independent Line ("American Line") is a shipping company based in the United States that provides shipping services around the world. Mot. (Dkt. # 25) at 2. Caterpillar contracted with American Line to transport the machinery at issue from the Port of Seattle to the Port of Kelang, Malaysia. Defendants Hyundai Merchant Marine Co., Ltd., and Hyundai Merchant Marine America (collectively, "Hyundai") are believed to have owned the ship that the machinery was to be transported aboard. Complaint (Dkt. # 1) at 2–3. The equipment was allegedly damaged while being loaded aboard that ship by Hyundai employees. Mot. (Dkt. # 25) at 4.

Defendant APL operated Terminal 5. Complaint (Dkt. # 1) at 3. Defendant Eagle Marine employed the stevedors or terminal operators at Terminal 5. Id.

## II. DISCUSSION

The crux of Defendants' motion is that the contract between the parties includes a forum selection clause that precludes this Court's jurisdiction. Specifically, that clause provides:

> 3. (Law and Jurisdiction) Whenever the Carriage of Goods by Sea Act 1936 (COGSA) of the United States of America applies, this contract is governed by United States Law, and the United States Federal Court, southern District of New York is to have exclusive jurisdiction to all disputes hereunder. In all other cases this Bill of Lading is subject to English law and jurisdiction.

Dkt. 25-3 at 20, 23.

In opposition, Plaintiff contends first that it is not subject to the terms of Caterpillar's contract with Defendant American Line because "it is subrogated to the interests of Sime Darby, its insured and the consignee for the subject shipment, not Caterpillar." Opp. (Dkt. # 38) at 2. Devoting no further discussion to that contention, it thereafter relies entirely on the argument that Defendant's terms are ambiguous as to when COGSA applies and that venue is therefore appropriate in this district. The Court addresses each of these contentions in turn.

**A. Application of the Contract**

The Court first concludes that Plaintiff is subject to the terms of the contract between Caterpillar and Defendant American Line.

As a preliminary matter, it has long been established that, "if the rights of the assured have been limited by lawful contract, the rights of the insurer are likewise limited." Atlas Assur. Co., Ltd. v. Harper, Robinson Shipping Co., 508 F.2d 1381, 1387 (1975). And, in this case, Plaintiff is suing for breach of contract based on those rights secured to Sime as a third party beneficiary under Caterpillar's contract. See Dkt. # 25-3 at 19. Accordingly, the Court sees no basis for not holding Plaintiff to the terms of the contract between Caterpillar and Defendant American Line. See, e.g., All Pac. Trading v. Vessel M/V Hanjin Yossu, 7 F.3d 1427, 1432 (9th Cir. 1993) (concluding that "Plaintiffs' initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading" (citing 17A Am. Jur. 2d Contracts § 456 (as a basic rule of contract interpretation, a party may accept a contract by filing suit on the contract))).

As noted in the Court's previous Order (Dkt. # 23), the closer question is whether the forum selection clause was part of the contract. The Court explained that, even assuming Caterpillar accepted Defendant American Line's offer through its performance, counsel had failed to provide sufficient evidence to demonstrate that Caterpillar had assented to terms and conditions, including the forum selection clause, that were not explicitly referenced in its offer. Defendant American Line has now corrected that deficiency. Id. at 2.

In its second motion, Defendant does a far more thorough job of articulating the sequence of events giving rise to the contract. It explains that American Line responded to a shipping inquiry from Caterpillar by providing a cost and service proposal on April 27, 2010. Mot. (Dkt. # 25) at 3; Dkt. # 25-3 at 32–33. Caterpillar accepted the proposal that same day through its agent, DHL Global Forwarding. See Dkt. # 25-3 at 35, 37.

Defendant responded by sending Caterpillar, through its agent, a booking confirmation document. This document summarized all the previously disclosed terms. See id. at 35. It also referred Caterpillar to Defendant American Line's "Terms and Conditions," which include its forum selection provision. Id.; id. at 39–45. Unfortunately, the booking confirmation document was also the first document in this transaction to refer Caterpillar to American Line's terms. Thus, though helpful in some regard, these facts simply underscore the issue previously flagged by the Court: that terms disclosed after an offer is accepted do not typically become part of the contract.[1] Order (Dkt. # 23).

Fortunately for Defendant, it also now provides evidence of a long course of dealing between it and Caterpillar that demonstrate Caterpillar's awareness and assent to the same terms and conditions American Line now seeks to enforce. Mot. (Dkt. # 25) at 6–9; Dkt. # 25-3 at 2–17. On 513 previous occasions, Caterpillar had booked shipments through American Line. Dkt. # 25-1 at ¶ 4; Dkt. # 25-3 at 2–17. Each time, American Line provided Caterpillar with a bill of lading that set forth all of its terms and conditions. Dkt. # 25-1 at ¶ 4. Those terms and conditions, including the forum selection clause, never changed. Id. at ¶¶ 4–5. And Caterpillar never expressed any desire to have them changed. Id. at ¶ 9.

This course of dealing makes all the difference. "In construing maritime contracts, we have held that '[w]here parties share a history of business dealings and standardized provisions have become part of those dealings, such familiar provisions within purchase orders issued after performance are binding where they are accepted without objection.'" One Beacon Ins. Co. v. Ley Marine Svcs., Inc., 648 F.3d 258, 265 (5th Cir. 2011) ((citation omitted)); accord Royal Ins. Co. v. Sea-Land Serv. Inc., 50 F.3d 723, 727 (9th Cir. 1995) ("'So long as the bill of lading has all the necessary information, the shipper, or any other interested party, has the means of learning

---

[1] If American Line's proposal referenced its terms, it would be a far easier case.

everything it may wish to know about the terms of the transaction.'" (quoting Carman Tool & Abrasives, Inc. v. Evergreen Lines, 871 F.2d 897 (9th Cir. 1989))). Because Caterpillar has a long history of accepting those terms disclosed by Defendant in its bills of lading, Caterpillar itself could not argue that it was either unaware of those terms or did not expect that they constituted part of the its agreement with Defendant. They are thus part of the contract and apply to Plaintiff. See Atlas Assur., 508 F.2d at 1387.

**B. Import of the Contractual Terms**

Having concluded that Defendant American Line's terms were part of its contract with Caterpillar, and that Plaintiff is bound by those terms, the Court further concludes that the Western District of Washington is not the correct forum for the present dispute.

The Supreme Court has held that courts must presume forum selection clauses like Defendant's to be valid and enforceable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 591 (1991) ("[I]n the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." (quoting Bremen v. Zapata, 407 U.S. 1, 15 (1972))). Admittedly, a party may overcome this presumption in some circumstances, id. at 591–92; Holland Am. Line Inc. v. Wartsila N.A., Inc., 485 F.3d 450, 457 (9th Cir. 2007), but Plaintiff does not make any such argument here.

Instead, Plaintiff argues only that the terms are ambiguous as to whether COGSA applies to the facts of this case. The Court sees no reason to take up that issue. If COGSA applies, venue lies in the Southern District of New York. Dkt. 25-3 at 20, 23. If it does not, venue lies in an area of "English jurisdiction." Id. In either case, this district is not the correct forum.[2]

The same is true of Plaintiff's claims against Defendants APL and Eagle Marine. American Line's terms and conditions secure each of its subcontractors, defined to

[2] The Court would note that Defendant American Line has represented that the appropriate venue for this case lies in the Southern District of New York.

include "stevedores, longshoremen, lighterers, terminal operators, warehousemen, truckers, agents, servants, and any person, firm, corporation or other legal entity which performs services incidental to the carriage of the Goods," id. at 22, the same benefits they secure American Line. Id. at 23. Accordingly, each of the Defendants in this case is entitled to enforce the forum selection clause.

Finally, because Plaintiff has not articulated any tenable example of prejudice that might result from dismissal, the Court exercises its discretion to dismiss the case without prejudice rather than transfer. See, e.g., Holland Am., 485 F.3d at 457.

## III. CONCLUSION

For all of the foregoing reasons, the motion to dismiss is GRANTED as to Defendants American Line, APL, and Eagle Marine. American Line's forum selection clause was part of the contract between Caterpillar and American Line and therefore also binds Plaintiff. Because Defendants American Line, APL, and Eagle Marine have acted to enforce their rights under the contract, the action against them is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(3).

Notably, the Hyundai Defendants have not requested dismissal. Undoubtedly, this is because they have yet to be served by Plaintiff even though the 90-day period for doing so has long since expired. Accordingly, the Court FURTHER ORDERS Plaintiff TO SHOW CAUSE within 10 days of the date of this Order as to why its claims against the Hyundai Defendants should not also be dismissed for failure to prosecute.

DATED this 3rd day of January, 2012.

Robert S. Lasnik
United States District Judge